IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,

v.                              CRIMINAL ACTION NO. 2:20-cr-00099

FRANKIE D. MCNEAL,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Defendant, Frankie McNeal's Memorandum Addressing Revocation Issues* (Document 71) and the related sealed exhibits (Document 73), as well as the *United States Response to Defendant's Memorandum Addressing Revocation Issues* (Document 74). The Defendant raises two issues: the viability of the first alleged violation, based on a malicious wounding charge in Kanawha County, West Virginia, and the retroactive application of Amendment 821 of the Sentencing Guidelines to remove two criminal history "status points."

    *1. Malicious Wounding*

Mr. McNeal is charged in Violation Number One of the Petition with violating mandatory condition number one, prohibiting the commission of another federal, state, or local crime. The Petition alleges that, on November 24, 2023, the Defendant struck his stepfather in the face with a hammer and was arrested for felonious malicious wounding. The Defendant presented state court records demonstrating that he was found not guilty of the underlying state charge by reason of mental illness. He supplied copies of two forensic psychological evaluations performed during

the state proceedings, both of which concluded that he lacked substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law at the time of the offense.   He argues that the United States would need to "present some evidence to rebut both the conclusions of the two psychiatric evaluations and the findings of the Circuit Court that Mr. McNeal was not criminally responsible" in order to establish each element of the crime that forms the basis of Violation One.   (Def. Mem. at 4.)

The United States, citing *United States v. Brown*, 899 F.2d 189 (2nd Cir. 1990), argues that insanity is not a defense in revocation proceedings.   It argues that the Court should make a factual determination as to whether the Defendant committed an act that violated the terms of his supervised release, and then consider his mental state only with regard to the appropriate disposition or penalty.   The United States discusses a district court case, *United States v. McNair*, 588 F.Supp.2d 1288 (M.D. Ala. 2008), which concluded that a defendant could not be in violation of a term of supervised release requiring him to avoid breaking the law if the state would not consider him guilty of the underlying criminal offense.   The United States urges the Court to follow *Brown* and "first determine if Defendant committed the Malicious Wounding offense" and then "consider the relevant Section 3553(a) sentencing factors, including Defendant's mental state."   (Resp. at 7-8.)

In *Brown*, the Second Circuit found that the federal insanity defense statute, 18 U.S.C. § 17, did not apply to revocations because they are not classified as criminal prosecutions.   *United States v. Brown*, 899 F.2d 189, 191 (2d Cir. 1990).   The court noted:

> In many revocation hearings, it is irrelevant whether a probationer can be held criminally responsible for his conduct. Because many of the routinely imposed conditions of probation do not, if violated, constitute criminal offenses, a judge considering probation

2

> revocation often has no occasion to determine criminality or offense
> elements such as criminal intent.

*Id.* at 193.   The court further reasoned that the punishment on a revocation is for the prior criminal

offense, rather punishing the violation, and so there was no need to import "a minimum standard

of criminal responsibility."   *Id.*

  *Brown* appears to be the only modern circuit court opinion clearly resolving the availability

of the insanity defense in revocation proceedings.   A district court within this Circuit recognized

that the availability of an insanity defense to defendants facing revocation proceedings is

undecided.   *United States v. Wilson*, No. 1:13 CR 57, 2020 WL 1672654, at *2 (W.D.N.C. Apr.

6, 2020) (citing *United States v. Ward*, No. 1:11CR42-MHT, 2014 WL 1492858, at *3 (M.D. Ala.

Apr. 16, 2014)).   The Third Circuit, in a brief unpublished decision, affirmed a district court

finding that a defendant "possessed the required *mens rea* to commit the crimes constituting his

supervised-release violations," without direct discussion of whether an insanity defense would

have been available. *United States v. Banks*, 572 F. App'x 162, 164–65 (3d Cir. 2014).   The

Seventh Circuit declined to decide the availability of the insanity defense based on a finding that

a defendant had not met the burden imposed by the federal statute establishing the standard for the

insanity defense in federal prosecutions.   *United States v. Mueller*, 116 F.3d 1483 (7th Cir. 1997).

  The District Court for the Middle District of Alabama expressed some skepticism for the

reasoning in *Brown*, explaining that revocation is mandatory for some violations, which could

"mandate significant prison time to be imposed for conduct completely outside the control of the

offender," raising fundamental fairness concerns.   *United States v. McNair*, 588 F. Supp. 2d 1288,

1292 (M.D. Ala. 2008).   However, the *McNair* court did not resolve the question of whether an

insanity defense is broadly available in revocation proceedings:

> While the court notes significant potential problems with a blanket rule depriving defendants in revocation proceedings of defenses that negate culpability, this case does not provide the opportunity for the court to delve further into these difficult questions of statutory interpretation, constitutional mandate, and general prudence. In this case, the violation with which McNair is charged itself provides him with the defense of insanity.

*Id.* at 1293.   Mr. McNair, like Mr. McNeal, was charged with violating his supervised release by committing another federal, state, or local crime, specifically the Alabama offense of Domestic Violence, Third Degree.   The court reasoned that his sanity was relevant to the factual question of whether he violated the law, because "[i]f Alabama would not consider McNair guilty of breaking its law, then McNair has not violated his supervised release."   *Id.*   The court ultimately found that Mr. McNair was not guilty of the state crime by reason of insanity but found modifications of his conditions of supervised release appropriate to address his behavior and his mental health.   *Id.*

The Court finds the reasoning of the Middle District of Alabama, in a case presenting precisely the same issue, to be persuasive.   Indeed, the instant case is even more clear cut, given that a state court has actually adjudged Mr. McNeal not guilty by reason of mental illness. Regardless of the availability of an insanity defense to a violation of a condition of supervised release, Mr. McNeal is charged, in Violation One, with committing another crime.   Violation of that condition necessarily imports the elements, including intent, and defenses, associated with the underlying crime.   There is no indication that the United States has evidence to counter the two forensic psychological evaluations prepared for the state court.   The United States' suggestion that the Court should find that the Defendant violated his conditions of supervised release by committing a crime for which he has been adjudged not guilty is inconsistent with basic principles

of fundamental fairness and respect for the state court that oversaw the state case. Therefore, absent additional evidence presented in the hearing, the Court finds that a crime that the Defendant lacked the mental capacity to commit cannot constitute a violation of the mandatory condition prohibiting commission of a federal, state, or local crime.

### 2. Status Points

The Defendant next argues that his criminal history should be revised to eliminate the assessment of two status points for committing the underlying conviction while on parole. He notes that Amendment 821 in Appendix C to the United States Sentencing Guidelines became effective on November 1, 2023, and application of the amendment became retroactive on February 1, 2024. Under the Amendment, Mr. McNeal would not receive status points because he had six or fewer criminal history points.[1] The Defendant argues that the Guideline range for any revocation sentence should be calculated in accordance with a revised Criminal History Category of II.

The United States argues that, in applying retroactive Guideline amendments, courts are to first determine the defendant's eligibility and calculate the amended Guideline range, then consider the applicable 18 U.S.C. § 3553(a) factors and determine whether the reduction is warranted. It contends that "a reduction to Defendant's criminal history category is not warranted under the facts of this case," based on the seriousness of the violation conduct. (Resp. at 9.)

On November 1, 2023, a multi-part criminal history amendment designated as Amendment 821 in Appendix C to the *Guidelines Manual* became effective. Part A of the amendment

---

[1] As the Defendant points out, the PSR originally calculated five criminal history points, plus the two status points. However, the Court sustained an objection to the inclusion of two points associated with a 2016 battery conviction because of insufficient evidence regarding the sentence, leaving him with three criminal history points, plus two status points.

addresses status points, decreasing them by one point for individuals with seven or more criminal history points and eliminating status points for those with six or fewer criminal history points. The Amendment has retroactive effect.

Mr. McNeal did not file a motion for a sentence reduction based on the retroactive amendment to the Guidelines pursuant to 18 U.S.C. § 3582(c)(2) because he had completed his sentence prior to the effective date of the Amendment. The United States recounts the applicable standard for consideration of sentence reductions under § 3582(c)(2): Courts first calculate the amended Guideline range, then apply the factors set forth in 18 U.S.C. § 3553(c) to determine whether the authorized sentence reduction is warranted. *Dillon v. United States*, 560 U.S. 817, 827 (2010); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). The United States interprets the second step, whereby courts retain discretion to deny sentence reductions, to permit courts to decline to accept the applicability of the retroactive amendment itself. But proper calculation of the Guidelines is not discretionary. *See, e.g.*, *Molina-Martinez v. United States*, 578 U.S. 189, 198 (2016) (holding that a Guideline error "can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error," warranting a finding of prejudice even for unpreserved errors); *Gall v. United States*, 552 U.S. 38, 51 (2007) (describing "failing to calculate (or improperly calculating) the Guidelines range" as a "significant procedural error"). The United States' arguments regarding the seriousness of Mr. McNeal's conduct and his criminal history remain relevant to the Court's consideration as to whether to impose a sentence within or outside a properly calculated Guideline range but are not relevant to the applicability of the retroactive amendment to the revocation proceeding.

The Guidelines do not appear to explicitly address the issue of applying a retroactive reduction in criminal history category at a revocation proceeding, and the Court has not identified binding precedent addressing the issue.   Retroactive amendments to the Guidelines do not authorize reduction of previously imposed revocation sentences.   U.S.S.G. § 1B1.10, Application Note 8(A).   Section 7B1.4 provides that "the criminal history category is the category applicable at the time the defendant originally was sentenced to a term of supervision."   § 7B1.4(a). Application Note 1 clarifies that the Sentencing Commission intended to ensure that a defendant's criminal history would not be increased based on additional criminal convictions sustained since the time of the original sentence, and so the Court does not find the language of Section 7B1.4(a) to provide guidance as to the present issue of a retroactive amendment that lowers the applicable criminal history score.   § 7B1.4, Application Note 1.

In determining that the changes promulgated in Amendment 821 should apply retroactively, the Sentencing Commission "determined that the policy reasons underlying the prospective application of the amendment apply with equal force to individuals who are already sentenced."   U.S.S.G. Supplement to Appendix C (November 1, 2023), Amendment 825.   A retroactive law "extend[s] in scope or effect to matters that have occurred in the past." RETROACTIVE, Black's Law Dictionary (12th ed. 2024).   The Court finds that the retroactive change to the calculation of status points should apply to the calculation of his criminal history category for purposes of his revocation hearing.   The criminal history category applicable at his original sentencing is properly adjusted based on the retroactive amendment to the Guidelines. Should the United States prove that Mr. McNeal violated the conditions of his supervised release,

his criminal history category will be II, based on the three criminal history points attributable to him at his original sentencing, without consideration of the no longer applicable status points.

**CONCLUSION**

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the Defendant's request that the Court find Mr. McNeal cannot be said to have violated Mandatory Condition One based on a charge for which he has been adjudged not guilty by reason of mental illness be **GRANTED**. The Court further **ORDERS** that the Defendant's request that his criminal history category be amended to reflect the retroactive amendment to the Guidelines be **GRANTED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, to the United States Attorney, to the United States Probation Office, and to the Office of the United States Marshal.

ENTER:      January 15, 2025

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

8